UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA,

          Plaintiff,

    v.

BERNZOMATIC, et al.,

          Defendants.
_____/

NO. 2:10-cv-1224 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendants Bernzomatic,[1] Irwin Industrial Tool Company, and W.W. Grainger, Inc.'s (collectively, "defendants") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2]  For the

---

[1]    Defendant Bernzomatic asserts that it was also erroneously sued as Newell Rubbermaid, Inc.

[2]    Plaintiff also filed a motion for leave to amend complaint to add defendants discovered as a result of initial discovery in this matter.  Defendants do not oppose the motion. Upon review of the submissions, good cause having been shown, plaintiff's motion for leave to amend is GRANTED.

1 reasons set forth below,[3] defendants' motion for summary judgment

2 is DENIED.

### BACKGROUND[4]

4     This case arises out of injuries suffered by Scott Callaway

5 ("Callaway") and James Bartlett ("Bartlett") on September 2,

6 2008, during the course and scope of their employment with

7 plaintiff. (PUF ¶¶ 1-2.) Callaway and Bartlett were using a

8 BernzOmatic MAPP gas canister and Lenox torch tip assembly. (PUF

9 ¶ 2.) Specifically, the assembly has been identified as a Lenox

10 branded Bernzomatic torch with a MAPP gas cylinder, bearing a

11 Bernzomatic label ("the Bernzomatic product"). (PUF ¶ 3.) In

12 the course of using the Bernzomatic product, Callaway and

13 Bartlett suffered burn injuries. (PUF ¶ 4.) Plaintiff has paid

14 workers' compensation benefits to and on behalf of Callaway and

15 Bartlett. (PUF ¶ 5.) At the time plaintiff filed its opposition

16 to defendants' motion for summary judgment, plaintiff had

17 expended $32,938.07 in benefits for the treatment of Bartlett's

18 injuries and $134,524.48 in benefits for the treatment of

19 Callaway's injuries. (PDF ¶ 5.)

---

21    [3] Because oral argument will not be of material
assistance, the court orders the matter submitted on the briefs.
22 E.D. Cal. L.R. 230(g).

23    [4] Unless otherwise noted, the facts herein are
undisputed. (See Pl.'s Response to Defs.' Statement of
24 Undisputed Facts ("PUF") [Docket #27], filed Sept. 2, 2010; Pl.'s
Statement of Disputed Facts ("PDF") [Docket #27], filed Sept. 2,
25 2010.)

26    Plaintiff also filed numerous objections to defendants'
evidence. The court has reviewed the filings and concludes that
27 the evidence objected to is either irrelevant to the court's
determination or the objections are otherwise without merit.
28 Accordingly, the objections are OVERRULED.

1    On August 5, 2009, Callaway and Bartlett filed a personal

2 injury lawsuit against defendants.  (PUF ¶ 6.)  Subsequently,

3 counsel for Callaway and Bartlett contacted defendants' counsel,

4 stating that their expert witness had established that the

5 Bernzomatic product was not defective in design or manufacture

6 and, therefore, that they were going to dismiss the action.[5]

7 (PUF ¶ 7.)  A stipulated dismissal with prejudice of the lawsuit

8 was signed by attorneys for Callaway and Bartlett and for

9 defendants and filed on January 4, 2010.  (PUF ¶ 8.)  The

10 stipulated dismissal provided that "each party shall bear its own

11 costs and attorneys' fees in connection with the lawsuit and the

12 negotiation and preparation of this Stipulation Dismissal."  (Ex.

13 B to Decl. of Michael C. Osborne ("Osborne Decl."), filed Aug.

14 13, 2010.)

15    On April 5, 2010, plaintiff filed a complaint against

16 defendants in the Superior Court of California, County of Yolo.

17 Defendants were served on April 20, 2010.  On May 19, 2010,

18 defendants removed the case to this court on the basis of federal

19 diversity jurisdiction.

**STANDARD**

21    The Federal Rules of Civil Procedure provide for summary

22 judgment where "the pleadings, the discovery and disclosure

23 materials on file, and any affidavits show that there is no

24 genuine issue as to any material fact and that the movant is

25

---

26    [5]    Plaintiff objects to this evidence as inadmissible
hearsay.  However, the evidence is not being offered for the
27 truth of the matter asserted, but rather as evidence of what was
said to defendants' counsel regarding dismissal.  Further, the
28 reliability of the expert's opinion is irrelevant on this point.

1   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);

2   see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).

3   The evidence must be viewed in the light most favorable to the

4   nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th

5   Cir. 2000) (en banc).

6        The moving party bears the initial burden of demonstrating

7   the absence of a genuine issue of fact.  See Celotex Corp. v.

8   Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to

9   meet this burden, "the nonmoving party has no obligation to

10  produce anything, even if the nonmoving party would have the

11  ultimate burden of persuasion at trial."  Nissan Fire & Marine

12  Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

13  However, if the nonmoving party has the burden of proof at trial,

14  the moving party only needs to show "that there is an absence of

15  evidence to support the nonmoving party's case."  Celotex Corp.,

16  477 U.S. at 325.

17       Once the moving party has met its burden of proof, the

18  nonmoving party must produce evidence on which a reasonable trier

19  of fact could find in its favor viewing the record as a whole in

20  light of the evidentiary burden the law places on that party.

21  See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th

22  Cir. 1995).  The nonmoving party cannot simply rest on its

23  allegations without any significant probative evidence tending to

24  support the complaint.  See Nissan Fire & Marine, 210 F.3d at

25  1107.  Instead, through admissible evidence the nonmoving party

26  "must set forth specific facts showing that there is a genuine

27  issue for trial."  Fed. R. Civ. P. 56(e).

28  /////

1                              **ANALYSIS**

2        Plaintiff brings suit for recovery of workers' compensation

3   benefits under California Labor Code § 3582 et seq.  Defendants

4   move to dismiss, arguing that (1) plaintiff is precluded from

5   bringing suit under equitable subrogation principles because

6   Bartlett and Callaway dismissed their claims with prejudice; and

7   (2) plaintiff fails to submit evidence of defect.

8   **A.    Plaintiff's Ability to Pursue a Claim**

9        California Labor Code § 3852 provides that "[t]he claims of

10  an employee . . . for compensation does not affect his or her

11  right of action for all damages proximately resulting from the

12  injury or death against any person other than the employer.  Any

13  employer who pays, or becomes obligated to pay compensation . . .

14  may likewise make a claim or bring an action against the third

15  person."  In seeking to recoup such benefits and damages, the

16  employer may "(1) intervene in an injured worker's action, (2)

17  file an independent action, or (3) assert a lien in an injured

18  worker's action."  Fremont Comp. Ins. Co. v. Sierra Pine, Ltd.,

19  121 Cal. App. 4th 389, 396 (3d Dist. 2004).

20       Section 3859 of the Labor Code provides that "[n]o release

21  or settlement of any claim . . . as to either the employee or the

22  employer is valid without the written consent of both."  While an

23  employee may "settle and release any claim" against a third party

24  without the consent of the employer, "such settlement or release

25  shall be subject to the employer's right to proceed to recover

26  compensation he has paid in accordance with § 3582."  Cal. Labor

27  Code § 3859.  Further, section 3860 provides,

28

                                   5

1
2
3
4
5
6

> No release or settlement under this chapter, with or
> without suit, is valid or binding as to any party
> thereto without notice to both the employer and the
> employee, with opportunity to the employer to recover
> the amount of compensation he has paid or become
> obligated to pay and any special damages to which he
> may be entitled under Section 3852, and opportunity to
> the employee to recover all damages he has suffered and
> with provision for determination of expenses and
> attorney's fees as herein provided.

7     Section 3852 has been characterized as "codifying principles

8  of equitable subrogation, rather than indemnity." Fremont Comp.

9  Ins. Co., 121 Cal. App. 4th at 398 (noting that such

10 characterizations have been made in response to claims that §

11 3582 creates a source of substantive liability). "Equitable

12 subrogation is a legal device which permits a party who has been

13 required to satisfy a loss created by a third party's wrong to

14 step into the shoes of the loser and recover from the wrongdoer."

15 Id. "Because the subrogee steps into the shoes of the subrogor,

16 the third party has all defenses against the subrogee that it

17 would have against the subrogor." Id. (citing Fireman's Fund

18 Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1291 (1st

19 Dist. 1998)).

20     However, "the generality that the Labor Code models common

21 law subrogation principles does not warrant disregarding the

22 explicit terms of the statutory scheme." Id.  Rather, the

23 California Supreme Court has explained that subrogation

24 principles must be applied to further the legislative purposes of

25 the compensation statutes. Id. (citing Bd. of Admin. v. Glover,

26 34 Cal. 3d 906, 916-17 (1983)).  The addition of §§ 3859 and 3860

27 to the compensation statutes in 1971 "authorize an employee's

28 settlement of his own unreimbursed claim for damages without the

6

1 employer's approval and recognize the employer's independent

2 right to proceed against the alleged tortfeasor to recover

3 payments it had made to its employee." Glover 34 Cal. 3d at 914.

4 Courts have construed the legislative purpose of these sections

5 as ensuring that "the third party is liable for all the wrong his

6 tortfeasance brought about; this includes both the damage to the

7 employee and payments made or required to be made by the

8 employer." Fremont Comp. Ins. Co., 121 Cal. App. 4th at 400

9 (citations and quotations omitted); see Van Nuis v. Los Angeles

10 Soap Co., 36 Cal. App. 3d 222, 229 (2d Dist. 1974) (noting that

11 the dual purpose of the subrogation provisions are to ensure full

12 reimbursement to the employer for the amount of compensation

13 benefits paid to the employee and to prevent an employee's double

14 recovery of payments for the same compensable injury).  There is

15 also a "corresponding public policy to reduce the cost of

16 compensation insurance by allowing carriers to recoup payments."

17 Id. (citing Abdala v. Aziz, 3 Cal. App. 4th 369, 377 (2d Dist.

18 1992)).  Accordingly, there is "a clear legislative policy

19 militating in favor of reimbursement whenever possible." Abdala,

20 3 Cal. App. 4th at 377; see Fremont Comp. Ins. Co., 121 Cal. App.

21 4th at 400 ("When [an employer] has *paid out money* it should be

22 able to recoup.") (emphasis in original).

23     Under the compensation statutes, an employer may have an

24 independent action against an alleged third-party tortfeasor,

25 notwithstanding a settlement or release between the tortfeasor

26 and the employee, if the statutory notice and consent

27 requirements in favor of the employer have not been satisfied.

28 See Roski v. Superior Court, 17 Cal. App. 3d 841, 846 (2d Dist.

1  1971).[6]  The obligation to provide notice of release or

2  settlement to an employer is generally imposed upon the employee.

3  See Glover, 34 Cal. 3d at 916 (noting that "the burden of failure

4  to comply with the statutory obligation of notice to [the

5  employer] of the employee's settlement is placed upon the

6  employee" because the employee is the only participant in the

7  settlement who knew of the employer's claim for reimbursement).

8  However, "where . . . the third party tortfeasor prior to

9  settlement is or reasonably should be aware of the possibility of

10  the employer's claim, such tortfeasor may also incur liability to

11  the employer under the statutory scheme because of his failure to

12  notify the employer of the settlement and to obtain its consent

13  thereto."  Id. at 919; see Ventura County Employees' Retirement

14  Ass'n v. Pope, 87 Cal. App. 3d 938, 957 (1978) (noting that a

15  knowing third-party tortfeasor who proceeded with a settlement

16  and release with an employee – without the employee or the

17  tortfeasor giving notice of the prospective settlement to the

18  employer – entered into the settlement at its peril; absent such

19  notice to the employer, the settlement is not binding on the

20  employer and need not be taken into account in future litigation

21  against the tortfeasor); see also McKinnon v. Otis Elevator Co.,

22  149 Cal. App. 4th 1125, 1135 (3d Dist. 2007) (applying the same

23  principle to a settlement entered into by an employer and third

24  party without notice to the employee).

25  _____

26  [6]    The court's decision in Roski addressed the validity of
    a settlement and voluntary dismissal agreed to by the employer
    and a third party.  Id. at 843.  However, the Supreme Court has
27  noted that "[u]nder the California workers compensation scheme,
    employer and employee third-party actions are interchangeable."
28  County of San Diego v. Sandax Corp., 19 Cal. 3d 862, 872 (1977).

1      In this case, Callaway and Bartlett's voluntary dismissal

2 with prejudice of their claims against defendants does not bar

3 plaintiff's lawsuit against defendants.  First, the stipulated

4 dismissal of the claims, signed by both the employees' counsel

5 and defendants' counsel, served as a release of claims by the

6 employees against defendants.[7]  As such, the notice and consent

7 provisions of §§ 3859 and 3860 apply.  Second, there is no

8 evidence that either the employees, employees' counsel,

9 defendants, or defendants' counsel provided plaintiff with the

10 requisite notice; nor is there evidence that plaintiff consented

11 to the release.[8]  Third, defendants concede that they were aware

12 that plaintiff had an interest in the claim.  Specifically, in

13 their reply, defendants note that "there was an inspection of the

14 torch and cylinder attended by the injured workers'

15 representatives, Bernzomatic's representatives, and also the

16 Regents' representatives."  Further, the employees' complaint

17 "specified all the identifying and factual details of [the]

18 accident and injury" that occurred during "their course and scope

19 of employment with the University of California, Davis."

20 McKinnon, 149 Cal. App. 4th at 1137 (noting that the third party

21 knew or reasonably should have been aware of the employee's

22

---

23      [7]    While defendants assert in their reply that the
dismissal was not the result of a "negotiated" release or
24 settlement, nothing in the compensation statutes requires such
negotiation.  Rather, §§ 3859 and 3860 refer to any "release or
25 settlement."  Moreover, the stipulated dismissal included a
mutual waiver of costs.  (Ex. B to Osborne Decl.)
26
     [8]    See Van Nuis, 36 Cal. App. 3d at 230 ("The conceivable
27 reason an employer would withhold his consent to a settlement is
that the settlement does not include the amount of compensation
28 benefits paid by the employer.").

1 possible claim for damages as a result of the employer's

2 complaint); (Complaint for Damages for Personal Injuries, Ex. A

3 to Osborne Decl., filed Aug. 13, 2010, ¶ 5).   Therefore,

4 defendants were aware or reasonably should have been aware of

5 plaintiff's claim for reimbursement.   Accordingly, under the

6 circumstances, plaintiff has an independent action against

7 defendant, notwithstanding the employees' release because the

8 statutory notice and consent requirements in favor of the

9 employer have not been satisfied.

10     Defendants' reliance on Hubbard v. Boelt, 140 Cal. App. 3d

11 882 (4th Dist. 1983), is misplaced.   In Hubbard, the court noted

12 that it was established that the employee's claim was barred by

13 the "fireman's rule" because the employee had "knowingly and

14 voluntarily confronted a hazard" and thus, the employee was not

15 entitled to damages.   Id. at 883.   The court held that as the

16 employee did not have a claim for damages, the employer similarly

17 did not have a claim under § 3852 because "an employer who has

18 paid benefits to an injured employee cannot collect reimbursement

19 from a party who is immune to suit by the employee."   Id. at 884.

20 However, unlike this case, Hubbard addressed an underlying

21 defense on the merits of the claim against the defendant; it did

22 not involve a release or settlement of the underlying claim.

23 Further, unlike this case, no statutory provisions were directly

24 implicated by that defense.   Accordingly, because Hubbard did not

25 involve a release or settlement or raise issues under §§ 3859 or

26 3860, the court's reasoning and conclusion in that case is

27 unpersuasive.

28 /////

1    For the foregoing reasons, and in light of the "clear

2 legislative policy militating in favor of reimbursement whenever

3 possible," the dismissal of the employee's lawsuit does not bar

4 plaintiff's suit against defendants.

5 **B.    Evidence of Defect**

6    To set forth a claim of product defect, a plaintiff must

7 "present substantial evidence" that a defendant manufactured the

8 product, the product was defective in its manufacture or design,

9 the defect existed when the tire left the defendant's possession,

10 the defect was the cause of the injury, and the injury was caused

11 by a reasonably foreseeable use.  Stephen v. Ford Motor Co., 134

12 Cal. App. 4th 1363, 1370 (2d Dist. 2005).  "[W]here . . . the

13 complexity of the causation issue is beyond common experience,

14 expert testimony is required to establish causation."  Id. at

15 1373.

16    In this case, there is conflicting evidence regarding

17 whether defendants' product was defective and whether any such

18 defect caused Callaway and Bartlett's injuries.  Defendants rely

19 upon Callaway and Bartlett's retained expert,[9] Michael O'Connor.

20 O'Connor, a licensed structural, electrical, and mechanical

21 engineer, determined that the cylinder breach, which was a

22 substantial factor in the injuries, was due to improper handling

23 and user abuse, not manufacturing or design defect.  (See PUF ¶

24 9-12.)  Plaintiff has retained the services of Ramesh Kar

25 ────────────

26    [9]   Plaintiff objects to consideration of O'Connor's
declaration because it contends there has been no showing that
the conclusion was based on reliable principles and methods.
27 Because the court concludes that plaintiff has raised a material
issue of fact regarding defect and causation, the court need not
28 reach the merits of this objection.

11

1  ("Kar"), Ph.D., P.E., a Registered Professional Metallurgical

2  Engineer and a Board Certified Diplomate by the American Board of

3  Forensics Examiner.  (PDF ¶¶ 5-6.)  Kar concluded that the

4  premature failure in the brazed neck region of the cylinder was

5  not caused by abuse, accidental dropping of the cylinder, or

6  impact stresses.  (PDF ¶ 10.)  Rather, he asserts that

7  macroscopic examination of the fractured neck region "indicates

8  that failure more likely than not was caused by a serious

9  metallurgical manufacturing defect in the brazed region of the

10  neck."  (Decl. of Ramesh J. Kar, Ph.D., P.E., filed Sept. 2,

11  2010, ¶ 13.)[10]

12      Accordingly, because plaintiff and defendants have proffered

13  conflicting evidence regarding whether there was a defect and

14  whether the defect cause the injuries, summary judgment is

15  inappropriate.

16                          **CONCLUSION**

17      For the foregoing reasons, defendants' motion for summary

18  judgment is DENIED.

19      IT IS SO ORDERED.

20  DATED: December 7, 2010

21                          _____
                            FRANK C. DAMRELL, JR.
22                          UNITED STATES DISTRICT JUDGE

23

24

25

26

27  _____

28      [10]   Defendants did not respond to plaintiff's evidence
        regarding defect or causation in their reply.

                              12